**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | |
|---|---|
| **PAUL WENGER,**<br><br>**and**<br><br>**MARLENE WENGER,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**THE GOODYEAR TIRE & RUBBER COMPANY, A FOREIGN COMPANY**<br><br>**and**<br><br>**SUMITOMO RUBBER U.S.A., LLC f/k/a GOODYEAR DUNLOP TIRES NORTH AMERICA, LTD., A FOREIGN COMPANY**<br><br>**and**<br><br>**SUMITOMO RUBBER INDUSTRIES, LTD., A FOREIGN COMPANY**<br><br>**Defendants.** | **Case No.** 3:22cv476 |

**COMPLAINT**

Plaintiffs, Paul Wenger and Marlene Wenger (collectively, "Plaintiffs"), by counsel and for their Complaint seeking judgment against Defendants the Goodyear Tire and Rubber Company, Sumitomo Rubber U.S.A., LLC, and Sumitomo Rubber Industries, LTD, (collectively, "Defendants"), respectfully allege as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over Plaintiffs' claims based on diversity of citizenship under 28 U.S.C. § 1332(a)(1), because the state of the citizenship of Plaintiffs is different from the state of the citizenship of all of the Defendants, and the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs.

2. Venue is appropriate here pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

3. Assignment to the Richmond Division of the Eastern District of Virginia is proper under Local Rule 3(B)(4), as a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in the City of Petersburg.

## PARTIES

4. Plaintiff, Paul Wenger ("Mr. Wenger"), is a citizen and resident of North Carolina.

5. Plaintiff, Marlene Wenger ("Ms. Wenger"), is a citizen and resident of North Carolina. Mr. Wenger and Ms. Wenger are and were, at all relevant times, married.

6. Defendant, the Goodyear Tire and Rubber Company ("GOODYEAR"), is a corporation organized pursuant to the laws of the State of Ohio, with its principal place of business located in Akron, Ohio. GOODYEAR maintains a registered agent in Richmond, Virginia. GOODYEAR is present and doing business in Virginia.

7. Defendant, Sumitomo Rubber U.S.A., LLC ("SUMITOMO"), is a corporation organized pursuant to the laws of a state other than North Carolina, and upon information and belief, is the current legal name of the entity formally known as Goodyear Dunlop Tire North

America, Ltd. Alternatively, SUMITOMO is the successor entity to the entity formally known as Goodyear Dunlop Tire North America, Ltd. Upon information and belief, SUMITOMO is jointly owned by Sumitomo Rubber North America, Inc. and SRI USA, Inc., with SRI USA, Inc. being a wholly owned subsidiary of Sumitomo Rubber Industries, Ltd., a publicly held corporation.

8. Defendant, Sumitomo Rubber Industries, LTD, ("SRI") is a foreign corporation incorporated under the laws of Japan and with its principal place of business located in Japan.

9. All of the Defendants, separately and together, cooperated to design, manufacture, construct, distribute, market, promote and otherwise place the subject tire into the stream of commerce and onto the recreational vehicle driven by Paul Wenger during the subject crash.

**PERSONAL JURISDICTION ALLEGATIONS**

10. This Court has specific personal jurisdiction over Plaintiffs' claims through the application of Virginia's long arm statute, Virginia Code § 8.01-328.1, because Defendants caused tortious injury to the Plaintiffs within the Commonwealth of Virginia at a time when the Defendants regularly did or solicited business within the Commonwealth of Virginia and the products serviced and manufactured by the Defendant were used and consumed within Virginia in the ordinary course of commerce, trade, and use.

11. Additionally, the following allegations support the proper exercise of both general and specific personal jurisdiction by this Court, given that Defendants, at all times relevant, purposely availed themselves of doing business in the Commonwealth of Virginia by personally, or through their agents, undertaking the following acts which establish systematic and continuous contacts and affiliations with the Commonwealth of Virginia:

a. GOODYEAR and SUMITOMO directly target marketing to, and franchise within Virginia, and set prices in the Virginia market in conjunction with contracts between GOODYEAR and SUMITOMO and Virginia businesses;

b. Plaintiffs' causes of action arise from GOODYEAR and SUMITOMO's activities related to the manufacture, research, development, design implementation, testing, in-field monitoring, warranting and warning dissemination in relation to tires such as the G670 RV tire, size 295/80 R 22.5, load range H (the " Subject Tire"), which failed in a catastrophic manner in Virginia;

c. GOODYEAR and SUMITOMO participated in the design and manufacture of the defectively designed and manufactured Subject Tire, which failed in a catastrophic manner in Virginia that resulted in damages suffered by Plaintiffs as set forth below;

d. Plaintiffs' causes of action arise from GOODYEAR and SUMITOMO's activities related to the design of tires made with patented technology invented by an employee of Defendants', and such tires include the Subject Tire, which was purchased as part of a recreational vehicle ("RV") by the Wengers and which failed in a catastrophic manner in Virginia, as well as countless tires directed into the Virginia market;

e. Plaintiffs' causes of action in this case are based, in part, on the fact that Defendants, GOODYEAR and SUMITOMO, placed the tire at issue, which the Defendants, GOODYEAR and SUMITOMO designed, into the stream of commerce with the expectation that it would be used by consumers in the forum state;

f. GOODYEAR and SUMITOMO are aware that the stream of commerce will sweep their tires into Virginia;

g. Beyond placing the Subject Tire into the stream of commerce GOODYEAR and SUMITOMO have also engaged in additional conduct that indicates intent to serve the market in Virginia;

h. GOODYEAR and SUMITOMO's additional conduct indicates an intent to serve the market in Virginia including advertising in Virginia through national advertising that has intentionally pervaded into Virginia, and through specific marketing efforts particularly targeted at Virginia, including advertising focused on events in Virginia;

i. GOODYEAR and SUMITOMO have routinely performed in-field service and monitoring of tires (including performing warranting, recalling, and technical service) in Virginia;

j. GOODYEAR and SUMITOMO have and continue to train personnel at Defendants' tire dealerships in Virginia in tire workmanship and materials standards applicable to the tires they manufacture;

k. GOODYEAR and SUMITOMO gathered data about their tire lines performance in Virginia and used the data in the redesign of their products;

l. GOODYEAR and SUMITOMO have held patents and trademarks which they demand must be honored and enforced in Virginia;

m. GOODYEAR and SUMITOMO's additional conduct indicating an intent to serve the market in Virginia includes establishing channels for providing regular advice to customers in Virginia;

n. GOODYEAR and SUMITOMO have employed Virginia residents and have recruited Virginia residents for employment in Virginia and beyond Virginia;

o. GOODYEAR and SUMITOMO have had multiple Area Sales Managers assigned to multiple areas that have included different locations within Virginia;

p. GOODYEAR and SUMITOMO have had Regional Sales Managers assigned to multiple regions that have included different locations within Virginia;

q. GOODYEAR and SUMITOMO have Strategic Accounts Managers assigned to accounts in Virginia;

r. GOODYEAR and SUMITOMO have had Sales Analysts whose responsibilities included analyzing sales in Virginia;

s. GOODYEAR and SUMITOMO have had Retail Sales Representatives whose territories included Virginia;

t. GOODYEAR and SUMITOMO's additional conduct indicating an intent to serve the market in Virginia includes marketing tires in Virginia through a network of Virginia distributors who serve as Defendants' sales agents in Virginia;

u. GOODYEAR and SUMITOMO have had accounts with tire distributors in Virginia;

v. GOODYEAR and SUMITOMO have had accounts with tire dealerships in Virginia;

w. GOODYEAR and SUMITOMO have accounts with tire wholesalers in Virginia;

x. GOODYEAR and SUMITOMO have had accounts related to advertising and marketing directed specifically into Virginia markets;

y. GOODYEAR and SUMITOMO own the interactive website at www.goodyear.com, hold the copyright associated with the website, and control the content on the website;

z. The website at www.goodyear.com offers guidance to customers including customers in Virginia through the following features:

i. selection of Defendants' tires offered for sale, including tires which are offered for sale in Virginia;

ii. registration of tires with Defendants;

iii. promotions to obtain discounts or rewards for the purchase of Defendants' tires; and

iv. location of tire dealers, including tire dealers in Virginia which customers on the website can be directed to for purchasing Defendants' tires in Virginia;

aa. The website at www.goodyear has a "Let's Chat" feature offering live customer service including for customers in Virginia;

bb. Defendants direct their customers to dealers in Virginia for critical safety related tasks such as performing recall work and tire service bulletin services.

**STATEMENT OF FACTS**

12. This products liability action arises out of a single motor vehicle accident that occurred July 27, 2020, which involved a 2006 Monaco recreational vehicle ("RV") bearing Vehicle Identification Number (VIN) 1RF43564162037211 (the "Subject Vehicle").

13. At the time of the motor vehicle accident, the front driver's side tire affixed to the Subject Vehicle was a Goodyear G670 RV295/80R22.5 Load Range H, bearing DOT: DANU2CAW3211 (the "Subject Tire").

14. Defendants designed, manufactured, marketed, distributed and sold the Subject Tire in the United States for use on recreational vehicles, such as the Subject Vehicle.

15. The Subject Tire was manufactured by SUMITOMO on or about the 32nd week of 2011 at its Buffalo, New York plant.

16. The Subject Tire was then placed into the stream of commerce by Defendants. Ultimately, the Subject Tire became affixed to the Subject Vehicle that was being operated by Mr. Wenger on July 27, 2020, with Ms. Wenger in the passenger seat.

17. Prior to April 16, 2015, the Subject Tire was placed on the Subject Vehicle in its front left wheel position.

18. On or about April 16, 2015, Plaintiffs purchased the Subject Vehicle, which came equipped with the Subject Tire.

19. On July 27, 2020, Mr. Wenger was lawfully operating the Subject Vehicle southbound in Interstate 95, just north of Rives Road Route, in Petersburg, Virginia. Suddenly and without any warning, the Subject Tire's integrity failed, and the tread and belt system separated from the carcass of the Subject Tire.

20. As a direct result of the Subject Tire's failure, the Subject Vehicle became unstable, uncontrollable. Accordingly, the Subject Vehicle left the roadway and crashed into the guardrail adjacent to southbound I-95 before coming to a final rest.

21. At all times material hereto, the design and manufacture of the Subject Tire rendered the Subject Tire dangerous for its intended uses and for any of its foreseeable uses or misuses at the time it was sold by Defendants.

22. At all times material hereto, Defendants failed to perform testing adequate to determine the circumstances under which the Subject Tire was likely to fail or suffer tread and belt separation and causing loss of vehicle control while being used under intended and/or reasonably foreseeable conditions, or in an intended and/or reasonably foreseeable manner.

23. Defendants designed, manufactured and placed the Subject Tire into the stream of commerce, intending that it be used in the manner it was being used at the time of the above-mentioned failure.

24. At all times material hereto, the Subject Tire was maintained and inspected as often as a reasonable prudent person would have done under the same or similar circumstances, and at no time relevant here was the Subject Tire subjected to any unintended and unforeseeable conditions.

25. The Subject Tire was in substantially the same defective condition at the time of the above-mentioned failure and/or treat and belt separation as it was when it left Defendants' possession or control.

26. The Subject Tire's tire line, the G670 tire line, was the successor tire line to the Defendants' G159 tire line. The G159 tire line was designed with unsuitable characteristics for RV usage, including overly thick treads with wide belts which caused extreme heat within the tires and resulted in severe internal damage and degradation, as well as accelerated aging. The Defendants were aware of these issues and they manifested as a root cause of the many crashes caused by the catastrophic G159 tire failures in the field.

27. Despite having this knowledge, Defendants designed and manufactured the G670 tire line, including the Subject Tire, with similar characteristics including, but not limited to, thicker tread depth, wider top belt and thinner inner line.

28. Defendants' design and manufacture of the Subject Tire rendered the Subject Tire unreasonably dangerous for its intended uses and for any foreseeable uses or misuses at the time it was sold by Defendants.

29. The defective and unreasonably dangerous condition of the Subject Tire directly and proximately caused the Subject Tire's failure and the resulting accident that took place on July 27, 2020.

30. When Defendants manufactured and sold the Subject Tire they knew or should have known the Subject Tire was defective and unreasonably dangerous for its ordinary uses, intended uses, and all other foreseeable uses and misuses and could suffer a tread separation which, in turn, would lead to loss of vehicle control and serious injury to vehicle occupants.

31. At all times relevant, Defendants knew or should have known that the defective condition of the Subject Tire created a foreseeable and unreasonable risk of harm, including the likelihood of serious injury and/or death to those occupying any vehicle to which the Subject Tire was affixed.

32. At all times material hereto, reasonable alternative designs and processes of manufacturing and testing, that were economically and technologically feasible, existed within the tire industry and were within the actual and/or constructive knowledge and control of Defendants.

33. Plaintiffs did not know about, and had not reason to know about, the latent defective and unreasonably dangerous condition of the Subject Tire.

**COUNT I—NEGLIGENCE**
**(All Defendants)**

34. Plaintiffs readopt and reallege all of the foregoing paragraphs of this Complaint as if fully set forth herein.

35. At all relevant times, Defendants owed Plaintiffs a duty to design their tires, including the Subject Tire described above, in such a manner and with the exercise of reasonable care, so as to prevent the tread and steel belt package on the Subject Tire from separating from

the Subject Tire's carcass before selling the Subject Tire and placing it into the stream of commerce. To the extent Defendants did not owe this duty under existing Virginia law, they assumed such a duty by virtue of their conduct.

36. At all relevant times, Defendants owed Plaintiffs the duty to manufacture, assemble, inspect and/or test their tires, including the Subject Tire described above, in such a manner and with the exercise of reasonable care, so as to prevent the tread and steel belt package on the Subject Tire from separating from the Subject Tire's carcass before selling the Subject Tire and placing it into the stream of commerce. To the extent Defendants did not owe this duty under existing Virginia law, they assumed such a duty by virtue of their conduct.

37. At all relevant times, Defendants owed a duty to warn consumers and/or intended users of the Subject Tire, including Plaintiffs, of known or suspected defects that rendered the Subject Tire unreasonably dangerous to use. Upon information and belief, Defendants knew or had reason to know that the Subject Tire posed an unreasonable risk of harm by virtue of informal and formal claims arising from substantially similar incidents, internal testing and research, and other sources of information to be developed in discovery. To the extent Defendants did not owe this duty under existing Virginia law, they assumed such a duty by virtue of their conduct.

38. Defendants breached the above-cited duties in various ways, including but not limited to, one or more of the following negligent acts:

a. By failing to use due care in designing the Subject Tire's construction so as to prevent excessive forces on the Subject Tire's components and deteriorating the same thereby rendering the Subject Tire unreasonably susceptible to (and ultimately causing) the tread-belt separation that occurred on July 27, 2020.

b. By failing to exercise due care in manufacturing the Subject Tire, which in turn, led to an unreasonable and inadequate curing/bonding of the Subject Tire's tread to the remainder of the Subject Tire's carcass and thereby rendering the Subject Tire unreasonably susceptible to (and ultimately causing) the tread-belt separation that occurred on July 27, 2020.

c. By failing to make reasonable tests and/or inspections to discover the defective, hazardous, and unreasonably dangerous conditions relating to the Subject Tire's propensity to fail as described above;

d. By negligently failing to warn users of the Subject Tire, including Plaintiffs, of said defective, hazardous and unreasonably dangerous conditions relating to tire tread/belt separation of which Defendants knew or should have known through the exercise of ordinary care;

e. By failing to discover the defective, hazardous, and unreasonably dangerous conditions relating to the Subject Tire's propensity to sustain sudden, unexpected tread belt separations, while in the possession of Defendants, and during which times employees, servants or agents of Defendants had an opportunity to inspect, service and work on the subject tire;

f. By failing to warn users about tire aging, tire degrading, oxidation and ozonation which occur as a tire ages and makes the tire more likely to fail during normal use, including an increased likeliness to experience a tire tread belt separation as a result of aging when Defendants knew or should have known through the exercise of ordinary care of such a danger;

g. By negligently failing to design and manufacture a tire that was robust enough for its intended use as a tire on an RV; and

h. Other negligent acts and omissions to be developed in the course of discovery.

39. Defendants knew or should have known that exposing users to the dangerous,

defective, and hazardous condition existing in the Subject Tire would give rise to an unreasonable risk of serious bodily injuries.

40. The Subject Tire's defective condition was latent, and Plaintiffs were not capable of realizing the dangerous condition and could not have discovered the dangerous condition even upon performing a reasonable inspection of the same.

41. As a direct and proximate result of the negligence set forth in this Count, Mr. Wenger suffered severe physical injury, mental anguish, inconvenience, loss of the capacity for the enjoyment of life, physical deformity and handicap and embarrassment associated with the same, loss of earnings and earning capacity, incurred medical, nursing, attendant care and life care expenses for his care and treatment. These injuries are either permanent or continuing in their nature.

42. As a direct and proximate result of the negligence set forth in this Count, Ms. Wenger suffered severe physical injury, mental anguish, inconvenience, loss of the capacity for the enjoyment of life, physical deformity and handicap and embarrassment associated with the same, loss of earnings and earning capacity, incurred medical, nursing, attendant care and life care expenses for her care and treatment. These injuries are either permanent or continuing in their nature.

**COUNT II—BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY**
**(All Defendants)**

43. Plaintiffs readopt and reallege all of the foregoing paragraphs of this Complaint as if fully set forth herein.

44. At all relevant times, Defendants were in the business of manufacturing, marketing, selling, and distributing tires—including the Subject Tire—which caused Plaintiffs' injuries.

45. Defendants knew of the ordinary purposes for which the Subject Tire was intended and impliedly warranted the Subject Tire to be of merchantable quality, and to be safe and fit for such ordinary purposes (which included being affixed to an RV like the Subject Vehicle) and all other reasonably foreseeable uses and misuses.

46. At all relevant times, Plaintiffs used the Subject Tire in its intended manner and for its intended purpose and reasonably relied on the implied warranty of Defendants.

47. Defendants breached the above-referenced implied warranties as to the Subject Tire. Specifically, at the time the Subject Tire left Defendants' possession, it was not of merchantable quality and was unreasonably dangerous and unfit for the ordinary and reasonably foreseeable purposes for which it was intended and for reasonably foreseeable misuses. The Subject Tire's unreasonably dangerous qualities are evinced by the following:

a. The Subject Tire's design was unfit as it failed to prevent excessive forces on the Subject Tire's components and deteriorating the same, thus rendering the Subject Tire unreasonably susceptible to, and ultimately caused, the tread/belt separation that occurred on July 27, 2020; and

b. The Subject Tire's tread was inadequately cured and/or bonded to the remainder of the Tire's carcass, and thus rendered the Tire unreasonably susceptible to, and ultimately caused, the tread/belt separation that occurred on July 27, 2020.

48. Plaintiffs, as the operator(s) and/or occupant(s) of the Subject Vehicle, were persons who would foreseeably be injured by Defendants' breach of the implied warranty referenced in this Count. Defendants' breach of the warranty of merchantability as alleged herein directly and proximately caused the accident on July 27, 2020, and the resulting catastrophic injuries to Plaintiffs.

49. As a direct and proximate result of the above-referenced breaches of warranty by Defendants, Plaintiffs were seriously injured during the motor vehicle accident on July 27, 2020.

## DAMAGES

As a direct and proximate result of the Defendants' conduct set forth above, Plaintiffs suffered severe physical and emotional injuries and damages, including, but not limited to, the following:

a. Physical pain and suffering;

b. Mental anguish, emotional pain, torment and suffering;

c. Shame, fright, mortification, embarrassment, humiliation, and loss of dignity and pride;

d. Significant past and future medical expenses;

e. Other associated costs caused by the Defendants' unlawful and tortious conduct as alleged in this Complaint.

Plaintiffs hereby demand judgment, jointly and severally, against Defendants for compensatory damages in the amount of ONE MILLION FIVE HUNDRED THOUSAND DOLLARS ($1,500,000.00), together with costs incurred in the pursuit of a just resolution of this matter, pre-judgment and post-judgment interest, and attorneys' fees.

**A JURY TRIAL IS DEMANDED.**

Respectfully submitted,
PAUL WENGER
MARLENE WENGER

By: /s/
Counsel

Jonathan E. Halperin - VSB No. 32698
Andrew Lucchetti – VSB No. 86631
Halperin Law Center, LLC
4435 Waterfront Drive, Suite 100
Glen Allen, VA 23060
(804) 527-0100
(804) 597-0209 facsimile
jonathan@hlc.law
andrew@hlc.law
*Counsel for Plaintiffs*